IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


LA-QUN RASHEED WILLIAMS,        :
                               :
          Plaintiff            :
                               :
     v.                        :    CIVIL NO. 3:CV-10-979
                               :
JEFFREY BEARD, ET AL.,         :    (Judge Conaboy)
                               :
          Defendants           :

_____

**MEMORANDUM**
**Background**

La-qun Rasheed Williams (Plaintiff), an inmate presently
confined at the Greene State Correctional Institution, Waynesburg,
Pennsylvania (SCI-Greene) filed this pro se civil rights action
pursuant to 42 U.S.C. § 1983.  Plaintiff subsequently filed an
Amended Complaint (Docs. 15 & 16) which seeks relief regarding
actions which allegedly transpired during his prior incarceration
at the State Correctional Institution, Coal Township, Pennsylvania
(SCI-Coal Twp.).

By Memorandum and Order dated August 29, 2011, Defendants
Michael Weisner, M.D. and Physician's Assistant (PA) Brian Davis'
motion to dismiss was granted.  See Doc. 119.  Defendants Robert
Anascavage and Jacob Davis' motion to dismiss was granted on
February 13, 2012.

A motion seeking partial dismissal filed by the
Commonwealth Defendants was partially granted by Memorandum and
Order dated September 30, 2011.  See Doc. 124.  Dismissal was

1

granted in favor of the moving Commonwealth Defendants with respect to: (1) Williams' damage claims for monetary damages brought against the Commonwealth Defendants in their respective official capacities; (2) the allegations of verbal harassment, attempted bribery, and harassment; (3) Plaintiff's claims of being the target of a conspiracy; (4) all claims against Defendants Barnacle, Beard, Ellett, Michael Miller, Novitsky, Shedleski, and Varano due to lack of personal involvement; (5) the claims of deliberate indifference against Defendant McCarty;(6) Williams' claims relating to the issuance of four misconduct charges by Lieutenants Fago, Fetterholf, and Knarr as well as any due process claims against Hearing Examiner Kerns-Barr; (7) the alleged denial of telephone privileges on November 19, 2009; (8) Plaintiff's cell search claims; (9) the claims of mail interference with regards to the the yellow envelope, Mint Green and motorcyclist magazine related mailings; and (10) Williams' contentions of retaliation, food deprivation, and being served food loaf.

As a result of those prior rulings by this Court, Remaining Defendants are the following SCI-Coal Twp. Officials: Correctional Officers Andrew Kitchen, Michael Knarr, and Jimmy Fetterolf, Lieutenant Stephen Gooler, Sergeant Alana Peters, Counselor Rhonda Tomcavage, Major George Miller and Mail Supervisor Therese Jellen. Plaintiff's surviving allegations consists of the following two claims: (1) razor blade pieces were intentionally placed in Plaintiff's food, and (2) incoming mail from Williams' family was not delivered and the misconduct was covered up.  Presently pending

is Remaining Corrections Defendants' motion for summary judgment. <u>See</u> Doc. 247.  The opposed motion is ripe for consideration.

### **Discussion**

Remaining Defendants seek summary judgment on the grounds that: (1) Plaintiff failed to exhaust his administrative remedies with respect to his mail interference claims; (2) there are no allegations that Defendant Jellen wrongfully withheld Plaintiff's personal mail; (3) since it is undisputed that Major Miller investigated Plaintiff's claim of mail interference a viable claim has not been raised against that Defendant; (3) there are no facts alleged to support a claim that Counselor Tomcavage covered up the non-delivery of Plaintiff's personal mail; (4) Plaintiff cannot establish that Fetterolf and Kitchen either placed or were aware that razor blades or a scalpel were in the food which those officials served to the prisoner; and (5) the wholly speculative claims relating to Gooler, Peters, and Knarr doe not set forth a viable claim of deliberate indifference.

### **Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>See also</u> <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that

would allow a reasonable fact-finder to return a verdict for the non-moving party.  <u>Id</u>. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  <u>Saldana</u>, 260 F.3d at 232; <u>see also</u> <u>Reeder v. Sybron Transition Corp.</u>, 142 F.R.D. 607, 609 (M.D. Pa. 1992).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  <u>Versarge v. Township of Clinton</u>, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  <u>Id</u>. (internal quotations omitted); <u>see also</u> <u>Saldana</u>, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  <u>Celotex</u>, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  <u>Saldana</u>, 260 F.3d at 232 (quoting <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Mail**

Plaintiff claims that mail sent to him by his family members during the Fall, 2010 was not delivered and that Counselor Tomcavage was advised of the problem and attempted to cover up the non-delivery.[1]  Major Miller likewise allegedly failed to correct the problem and Mail Inspector Jellen was also involved because she forwarded Plaintiff's incoming mail to the prison's Security Office because the prisoner was designated for mail monitoring.

It also alleged that Lieutenant Gooler was present but denied any knowledge of the alleged mail interference.  See Doc. 15. ¶¶ 39-40.

Remaining Corrections Defendants argue that Williams failed to exhaust his available administrative remedies as to his mail interference claim.  <u>See</u> Doc. 248, p. 5.  They assert that with respect to said claims Plaintiff only sought administrative relief by submitting an informal staff request and did not complete the prison's well established grievance procedure.

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through

---

1.  It is well settled that interference with inmate non-legal mail may amount to a denial of free speech under the First and Fourteenth Amendments.

administrative avenues." <u>Porter v. Nussle</u>, 122 S.Ct. 983, 992 (2002); <u>Booth v. Churner</u>, 532 U.S. 731, 741 n. 6 (2001).  Claims for monetary relief are not excused from the exhaustion requirement.  <u>Nyhuis v. Reno</u>, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action.  <u>Ahmed v. Sromovski</u>, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000).  "[E]xhaustion must occur prior to filing suit, not while the suit is pending." <u>Tribe v. Harvey</u>, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999)); <u>Oriakhi v. United States</u>, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in <u>Jones v. Bock</u>, 549 U.S. 199, 219 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." <u>Id</u>.  The administrative exhaustion mandate also implies a procedural default component. <u>Spruill v. Gillis</u> 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." <u>Id</u>. at 230.  It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." <u>Id</u>.  Similarly, the Supreme Court has observed that

6

proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006).

"There is no futility exception" to the exhaustion requirement." <u>Brown v. Croak</u>, 312 F.3d 109, 112 (3d cir. 2002) (citing <u>Nyhuis</u>, 204 F.3d at 75. The Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. <u>Hill v. Smith</u>, 186 Fed. Appx. 271, 274 (3d Cir. 2006). The Court of Appeals has also rejected "sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." <u>Pena-Ruiz v. Solorzano</u>, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. <u>See</u>, <u>Jones</u>, 549 U.S. at 216; <u>see</u> <u>also Ray v. Kertes</u>, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). Rather, pursuant to the standards announced in <u>Williams v. Runyon</u>, 130 F.3d 568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.[2]

The Pennsylvania Department of Corrections ("DOC") has established a Consolidated Inmate Grievance Review System which has

---

2.   In <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

been periodically amended.  Section V of DC-ADM 804 (effective December 8, 2010) states that "every individual committed to its custody shall have access to a formal procedure through which to seek the resolution of problems or other issues of concern arising during the course of confinement."  <u>See</u> Doc. 29, p. 8.  It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal.  Section VI ("Procedures") of DC-ADM 804 provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent.  A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA).  A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court.  However, an improperly submitted grievance will not be reviewed.

The Third Circuit Court of Appeals has recognized that under the DOC's administrative review system a prisoner's grievance should identify specific persons, if practicable.  <u>Spruill</u>, 372 F.3d at 234.  The Court of Appeals explained that an unexplained failure to identify a responsible prison official in a grievance

8

constitutes a procedural default of the claim.  It also noted that the prison's grievance process could excuse such a procedural default by identifying the unidentified person and acknowledging that they were fairly within the compass of the prisoner's grievance.  However, in <u>Jones</u>, 549 U.S. at 219, the United States Supreme Court established that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."

In support of their argument, a declaration under penalty of perjury by DOC Grievance Review Officer Leilani Sears has been submitted.  <u>See</u> Doc. 250-1.  Sears verifies Plaintiff never appealed a grievance to final review regarding the merits of his mail interference claims "of failure to receive or be able to send letters to friends and family" between July 1, 2010 and December 31, 2010.  <u>Id</u>., ¶ 8.

Attached to Plaintiff's Amended Complaint are copies of various inmate requests which he initiated regarding alleged interference with his mail from family.  However, there are no documents which show that Williams administratively exhausted to final review any mail interference related grievance.[3]

Based upon an application of the well settled administrative exhaustion standards and the undisputed supporting evidence presented by the Remaining Defendants, they have satisfied their burden of demonstrating that the substance of the mail interference

---

3.  The exhibits do show that Williams exhausted a grievance regarding a mail related problem he allegedly had with an outside company, US Mint Green Ltd.

claims asserted against Defendants Tomcavage, Miller, Gooler, and Jellen was not encompassed within any grievance filed to final administrative review by Williams.  Accordingly, those three Defendants are entitled to entry of summary judgment on the basis of non-exhaustion of administrative remedies.[4]

**Kitchen and Fetterolf**

Plaintiff initially alleged that he was delivered a food tray by Correctional Officers Andrew Kitchen and Jimmy Fetterolf on January 21, 2010.  A sandwich on the food tray allegedly contained hidden pieces of razor blade which were put in Plaintiff's sandwich and sliced his tongue open.  Williams was subsequently granted leave to amend his food tampering claim to allege that it was a scalpel and not a razor blade which caused his injury.  See Doc. 243.  Later, on January 26, 2010, Plaintiff was again purportedly delivered a food tray by Fetterolf and Kitchen which also contained pieces of razor blade/scalpel.  It is also vaguely alleged that Defendants Gooler, Peters, and Knarr were involved or acquiesced in the food tampering.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety.  See Helling v. McKinney, 509 U.S. 25, 31 (1993).  Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and

---

4.  In light of this determination discussion of the remaining summary judgment arguments concerning Plaintiff's mail interference claim is not warranted.

serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities." Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).  An Eighth Amendment claim against a prison official must meet two requirements:  (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."[5]  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety."  Id.

Remaining Defendants contend that Williams has not satisfied the subjective component of Farmer because "he cannot establish that Defendants Fetterolf and Kitchen either placed the razor blades/a scalpel in his food or knew that they were there when they served the food to him."  Doc. 248, p. 11.

In support of their argument they have provided similar declarations under penalty of perjury by Kitchen and Fetterolf. Correctional Officer Kitchen states that "[a]t no time have I ever placed a razor blade or any foreign body in Plaintiff's food." Doc. 250-7, ¶ 5.  In addition to denying placing anything in Williams' food, Defendant Fetterolf adds that he is "unaware of any

---

5.    Under Farmer, deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety.  Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

other Department of Corrections personnel having ever placed razor blades or any foreign objects in Plaintiff's food." Doc. 250-6, ¶ 6.

Declarations by Knarr, Gooler and Peters have also been provided and each of those officials denies any involvement in the alleged food tampering incidents. Also submitted is a declaration under penalty of perjury by SCI-Coal Twp. Security Captain Charles Stetler who asserts that he completed an internal investigation into Plaintiff's claims of receiving tampered meal trays on January 21, 2010 and January 26, 2010. See Doc. 250-4. Stetler states that the investigation concluded that "no staff member was responsible for placing the razor blades in the food trays issued to Inmate LaQun Williams." Id. at ¶ 7. Stetler further opines that in his [professional opinion based on Plaintiff's conduct while in prison and the the inmate's "manipulative personality" he obtained the blades/scalpel himself "and then placed them in his own food to set up staff for a lawsuit." Id. at ¶ 8.

Remaining Defendants also note that in his deposition testimony, Williams clearly acknowledged  that he could not see anyone placing the foreign objects on his food on either of the two dates at issue. See Doc. 250-2, p. 9.

In opposition to Remaining Defendants' argument, Plaintiff has submitted a declaration from fellow inmate Michael Tacker who states that on January 21, 2010 he witnessed Kitchen and Fetterolf delivering food trays on the tier above him. The prisoner indicates that Fetterolf looked around and reached into his pants

12

pocket and pulled something out which the officer then handed to Kitchen.  <u>See</u> Doc. 259, ¶ 9.  The next sentence of Tacker's declaration is garbled as it appears that the original sentence was written over a second time.  The next sentence states "I no longer could see C/O AA Kitchen and Fetterolf because they was over top of me."  <u>Id</u>. at ¶ 11.  Tacker further asserts that shortly thereafter on that same day he told Plaintiff what he had seen.[6]

As detailed above the parties have submitted conflicting evidentiary submissions.  It is not the function of this Court to determine which view is more reasonable.  Rather, this Court must only undertake a resolution as to whether Remaining Defendants have satisfied their burden of showing that there is no genuine issue as to any material fact.  Based upon the the evidence submitted by the parties, especially the declaration by Inmate Tacker, there are clearly issues of material fact which undermine Kitchen and Fetterolf's argument of entitlement to entry of summary judgment.

**Gooler, Peters, and Knarr**

According to the Amended Complaint on June 26, 2009 Knarr stuck his thumb in Plaintiff's food tray.  <u>See</u> <u>id</u>. At ¶ 76.  Peters and Gooler allegedly acquiesced in Knarr's conduct by not favorably responding to Plaintiff's complaints. From that point forward, hostilities between Knarr and Plaintiff allegedly continued and escalated to include Kitchen, Fetterolf, Peters, and Gooler and

---

6. This averment is contradicted by Plaintiff's subsequent deposition testimony where he indicates only that he believed Kitchen and Fetterolf to be responsible because they were the ones who delivered the tray.  Tacker's account is not referenced by plaintiff's deposition testimony.

13

were usually associated with the delivery of food trays, especially milk cartons.

Remaining Defendants next argue that the allegations against Gooler, Peters, or Knarr "are even more speculative and attenuated. Doc. 248, p. 12.  They add that alleged involvement of Gooler is improperly based up his supervisory capacity.  <u>See</u> <u>id</u>.  Those three defendants have all submitted declarations under penalty of perjury wherein they deny placing razor blades or any foreign bodies in the Plaintiff's food.  They also aver that they have no knowledge that any correctional staff member undertook any  such action.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  <u>See</u> <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of <u>respondeat</u> <u>superior</u>.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077 (3d Cir. 1976).  As explained in <u>Rode</u>:

14

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system.  See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.") Consequently, any attempt by Plaintiff to establish liability against the Warden and Deputy Warden  solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Based upon a careful review of the Amended Complaint the claims against Lieutenant Gooler are either premised upon his supervisory capacity within Plaintiff's housing unit or failure to

take favorable action in response to Plaintiff's administrative complaint. Pursuant to the above discussion, either approach is insufficient to establish civil rights liability against Defendant Gooler. As such, Defendant Gooler's request for entry of summary judgment will be granted.

With respect to Defendant Knarr, a declaration by Major George Miller provides that with respect to the two dates when Plaintiff was allegedly given adulterated meals, Knarr was off work on January 21, 2010 and was assigned to perimeter patrol of the prison on January 26, 2010,

Based upon the undisputed evidence submitted by Remaining Defendants, especially Miller's declaration, there are no facts other than the Plaintiff's speculative contention which could support a claim that Knarr had any personal involvement whatsoever in the purported food tampering incidents of January 21, 2010 and January 26, 2010. Accordingly summary judgment will be entered in favor of that Defendant.

It is equally apparent that although Defendant Peters was admittedly at work on the two dates at issues, there are no facts presented to show that he had any participation, knowledge or acquiescence in the alleged acts of food tampering. Based upon the undisputed facts, Peters is also entitled to entry of summary judgment.

S/Richard P. Conaboy_____
RICHARD P. CONABOY
United States District Judge

DATED: SEPTEMBER 3, 2014

16